Good afternoon judges. May it please the court. I am Elsa Martinez and I represent the petitioner Mr. Gustavo Flores Barrios. I would like to reserve five minutes for rebuttal. Petitioner requests that the court hold that the immigration judges and the BIA have the authority under the regulations to administratively close cases when it is appropriate and necessary. Mr. Flores is a 57-year-old widow. He is a father of three United States citizen children and had resided in the United States for 26 years before the initiation of his removal proceedings in 2011. Mr. Flores requested a single continuance in order to perfect an I-130 petition through his newly married spouse and that continuance was denied. I thought the case was, oh I guess it was continued but not because he asked for the continuance. It was a very long-standing case but not because he was asking for the continuance. That's correct, your honor. From 2012 to 2016, Mr. Flores did not have a hearing before the immigration courts in Los Angeles due to their own docketing issues. He was without a hearing for four years. He never had sought a continuance previously. When the proceedings were resumed in 2016, he had filed an application for cancellation of removal and when he, in anticipation of his merits hearings, his former counsel did file a written request to continue the matter because he had entered into a legal marriage to a U.S. citizen spouse who he had actually been in a relationship since 2005. That motion was denied and it was argued at his individual hearing. An August 18, 2017 petition was granted voluntary departure. Two months later, his wife Anita passed away at the age of 52 from lung cancer. Mr. Flores has filed a widow petition which has remained pending with the agency for over two years and as of today remains unadjudicated. If we, I never know quite how this works, if we were to deny the petition and therefore file a removal, is that the end of the petition? It is not, Your Honor, but it essentially would cause Mr. Flores to be removed from the United States before having a decision on the merits of that application. Ideally, what would have happened in this case and to speak of the judge's decision saying that there was no benefit to administrative closure, not only would he have had his widow petition adjudicated, favorably adjudicated, he would have then a waiver because his case was administratively closed. He would have moved to re-calendar his matter before the court, taken a voluntary departure order which was granted in the exercise of discretion. He would have then left to Mexico to pursue his green card through those petitions and that would have been a benefit to him. He could have come back because he would have gotten this waiver. I'm sorry, can you repeat that? He could have come back then, not stayed out of the country for 10 years because he would have gotten this waiver. He would have had to apply for that waiver through the consular post. He would have remained outside of the country and separated from his family for as long as these proceedings have been ongoing and for as long as they take to adjudicate an I-360 petition. Administrative closure would have conserved the court's resources as well as the agency's because it would have adjudicated, as already stated, his widow petition and then he would have pursued other forms of relief. We believe that this case is right for this court to hold, that the federal regulations at ACFR 1003.10 and ACFR 1003.1 unambiguously authorizes immigration judges and the Board of Immigration Appeals to close cases when it is appropriate and necessary. I had a question in that regard, counsel, and that is the statute, and I know our other courts have discussed this, appropriate and necessary for the disposition of such cases. Do you consider administrative closure to be a disposition? It is, Your Honor, and I have actually looked into other fields like criminal law and civil law. Well, why does it have to be that? Why can't it just be appropriate and necessary to the ultimate disposition? It's more efficient, so therefore it's appropriate and necessary to the disposition. The Attorney General's hanging his hat, and I'll pass it to him on the disposition, meaning that we should have a finality that we should either have... I don't see why you're walking away from it. I don't see why... I think you're buying off more than you need to to say that the administrative closure is itself a disposition. It is a disposition. It is an action. I just want... Why do you need that? It's a suspension. I mean, we get this in court all the time, the administrative closure. Yes, Your Honor, and as we know... We don't regard it as a disposition. We just regard it as a suspension until something happens. At that point, we come back, and then we have the disposition. I wanted to respond to Judge Gleason's point that the Attorney General did think that that disposition, that word and that clause, meant that we should have a solution. We should have either a grant or denial, but we know that that ignores the reality of immigration proceedings where people can apply for benefits outside of the court. So I do believe that a disposition is an action. It doesn't necessarily need to mean that the matter is fully resolved. Okay. I believe that in order to agree with Castro-Tomb, as stated, it ignores the reality of immigration law. What are we to do in cases where an individual may be serving time in another facility, may be serving time and may be in custody? What do we do in cases where an individual may not have the mental competency? What do we do in cases where an individual may apply for relief outside of the presence of the court? We have to trust the position as stated by the National Association of Immigration Judges and one of our local judges, the Honorable Judge Tabador, who said the immigration court system is broken. There's over 1 million pending cases before over 400 immigration judges. And to remove this agency tool in order for them to be able to manage their dockets efficiently and to make fair decisions is without merit. And the Attorney General's actions in this case essentially was to create law and to hold that a regular, you know, how a regulation is applied is different than to say that it doesn't exist at all. And the Attorney General's position in Castro-Tomb is that the closed the case and our argument is that it does. But your argument has to be a little bit more than that. Not just that it does, but that it's unambiguous, right? So do you acknowledge that if it's ambiguous, then we would have to defer to the Attorney General's interpretation? Yes, I believe that the interpretation would then go to a further review. But I do... I'm sorry, Your Honor. Are you agreeing that if it's not ambiguous, if it isn't, if it's not unambiguous, then you move? No, Your Honor, not at all. I believe the Fourth Circuit and the Seventh Circuit have set that out as well. Take me through, you know, I mean, so I take it your primary argument is that the regulation unambiguously confers this authority on IJs and the Port. But suppose we think that, you know, you could read the regulation either way, then take me through the analysis of how you would still win if it's ambiguous. Well, we... there's no defense that should be given to the Attorney General's interpretation because it breaks from decades of the agency's use of this procedure. As we know, this has been around since the late 1980s. It fails to give a fair warning, creates an unfair surprise. There's arguments that have been set up. There are arguments that have been set up why it should not be given defense. What's the nature... I mean, sorry, let's take those one by one. The deviation from precedent doesn't necessarily negate an agency's authority to change its interpretation. But what is the argument that creates an unfair surprise? Can you describe the sort of reliance that there would have been on the prior interpretation? What are the nature of the... what is the nature of the reliance interests or the... how would people be unfairly surprised by this change in interpretation? Individuals who primarily meet the factors that were set out in Matter of Advocatesia, and if those were properly analyzed, could have a reasonable expectation that their administrative... More than 300,000 people who were in administratively closed places were now being reopened. In fact, when they were living their lives and waiting for whatever was supposed to happen to happen, and now they're going to have their proceedings reopened. That's not your client because we hadn't already gotten the closure. But the other piece of pastoral time is that everybody who's already been administratively closed is going to be reopened. That's correct, Your Honor. That is exactly what is happening in the immigration courts. And also the refusal to administratively close cases where we had historically done so for individuals who were under temporary protective status, for instance. Individuals who had acquired and were in valid DACA status. Those individuals today would now be able to pursue a reasonable expectation to have had their cases administratively closed. Is your client... I couldn't quite tell this. One of the examples that's used in the cases and so on about a situation in which the regulations specifically contemplate administrative closure is with regard to the waiver of, I guess, of having to leave the country to apply for a cancellation or adjustment or something. Is your client one of those people? Yes, he is, Your Honor. It's the unlawful presence waiver. Are you directly impacted in the sense that this category of person... Is that right? Or was there something I read that said that the rule doesn't say that anymore? Yes, it does, Your Honor. When the unlawful presence waiver was created, individuals who had an approved I-130 and were at the National Visa Center could have their cases administratively closed to pursue that waiver. That waiver essentially is... I'm sorry? Not only could, but had to. It had to be. It absolutely does. It absolutely has to be administratively closed for them to be able to file... So, he is directly a person for whom this is not just an abstract, a minor problem. It's directly connected to his ability to get to where he needs to be. Yes, Your Honor. Individuals with approved I-360s or I-130s would be able to pursue that unlawful presence in the United States if their cases were administratively closed. And Mr. Ford would have been one of those... He had a specific regulation that applied to him, and on which he could rely. Yes, Your Honor. That spoke specifically of administratively. Yes, Your Honor. I wasn't sure if that was true or not. Reserve the rest of my time for rebuttal. Ms. Camilleri. Thank you. Good afternoon. May it please the Court, this is Dana Camilleri for the Attorney General. The Attorney General's decision in Castro-Tum should be upheld, as the Sixth Circuit recently determined. It is not disputed that neither the statute nor the regulations contain explicit references to administrative closure, save for discrete instances not implicated here. Moreover, as the Sixth Circuit noted, administrative closure was simply a device created by immigration judges themselves that in hundreds of thousands of cases has amounted to a decision not to apply the immigration laws at all. The regulations do provide immigration judges... No, that might fall beside the point, because if the system's being abused, there are ways to prevent the system from being abused. This regulation is that you can't ever do it. No, properly or improperly, where there is a good reason, where there's a bad reason, you just can't do it. Well, Your Honor, respectfully... Your Honor, I was getting there. But respectfully, the regulations don't mention administrative closure, except for in these other circumstances that are inapplicable here. And in terms of what the plain language of the statute, it contemplates dispositions. This Court has itself said that administrative closure is not a disposition. And I think what has not been... I absolutely don't understand why that matters. It has to be necessary and appropriate, is that the term, for a disposition? And if it is necessary and appropriate, because there is something going on outside the system, which is going to affect the disposition. As I say, we as an appellate court do this quite frequently. When we have things we're waiting for, and it doesn't make any sense to continue it on the docket, because nothing's going to happen on the docket, we administratively close the case. We don't lose it. And if you're telling me they get lost, then that's a problem. They shouldn't get lost. It's not that they... We wait for something to happen, and then it happens. And it's appropriate and necessary for our disposition, because it's not appropriate for us to go plunging ahead when there's something that we should be waiting for. Are you referring to placing cases in advance? No, I'm talking to what we call administrative closure, specifically. Well, an important point that I would like to make is that most of the time the aliens are not petitioning to get back before the immigration judge. That's why these cases languish. DHS has to then petition and show a compelling reason to open them. But the point that I'd really like to... It doesn't say compelling reason. And second of all, that's the result of the adjudications themselves, and they can change that. But this is what I'm saying. You have to not defend the fact that there may be something wrong with this system. You have to defend the fact that it's to be abandoned entirely, that you should never be able to do it. Your Honor, I would like to do that right now. The point that I'm trying to make and just would really like to quickly get out is that nobody before Castro-Tum had actually assessed whether the board or the immigration judges had that power. All these other decisions cited, for example, matter of Abitizian cited a court settlement, which is a specific... That is actually one of the exceptions when administrative closure can be ordered from a Title III court. Article III court, excuse me. And so that's how they based Abitizian in that administrative closure. Nobody has ever decided that the regulations say this or explicitly grant this right. And the AG made that analysis and found that they do not. And I think the Sixth Circuit is correct that the plain language, it says any action necessary disposition, but it also says as authorized by the statute and the regulations. There's nothing authorizing administrative closure as a general power for immigration judges anywhere in the regulations or the statute. Well, there's nothing... Obviously, you're right. There's nothing in expressed terms referring to it. But we read the regulations in Gonzales Caraveo as pretty strongly suggesting the existence of such a power. If we were to rule for you, how could we reconcile that with what we've already said about the regulations in that case? I guess if that is the case, and we are having a disagreement about the plain language of the regulation, then I would say that it's ambiguous, in which case there should be deference to the Attorney General's interpretation of the ambiguous regulation at that juncture. I guess what I'm... The point of the question is maybe our statement in Gonzales Caraveo or the long practice doing this, maybe those things are evidence that it's really not so ambiguous, and that a general grant of authority to do whatever is necessary to the disposition of a case necessarily includes the authority to close the case when you think that that's appropriate. Why is that an incorrect understanding of the pre-Castro-Tum state of affairs? Because it isn't a disposition. It doesn't resolve anything in terms of the case. And so... I'm sorry, Your Honor? Could you again explain to me why that matters? Because that's part of the plain language of the regulation and... What is it saying? The Board of Immigration Judges, respectively, are authorized to exercise their judgment and discretion, take any action consistent with their authorities under the INA and the regulations that is appropriate and necessary for the disposition of such cases. All right. So if we assume that the disposition is the final decision as to whether to grant or deny removal or grant or deny relief, and let's assume that's the disposition, which... Your Honor, if I may, just one... There is a separate regulation at ATFR 1003.10B, which lists the specific powers that immigration judges can take for dispositions of cases, and it does not include administrative closure. But I'm sorry. Go back to the point. Should I disclose every detail of everything else they do upon the way of deciding the case? Continuances, termination, all those things are contained in the regulation. Administrative closure is only expressly set forth in these other regs that don't apply in this case. What's your answer to the point that your friend on the other side made, that, you know, if we think it's ambiguous, we ought not apply deference under our against Robbins, because it would disrupt settled expectations to reopen hundreds of thousands of cases of, you know, people who legitimately thought that their cases had been closed? Well, or administratively. Well, administrative closure is not the disposition which everyone, I think, understands, and it could have been reopened at any time previously also. Right, but there was an understanding that they were waiting for something, that they're administratively closed until X. And now he's saying, just open them all now. I'm not sure he's saying that. I think he's saying that other tools need to be used in terms of continuances or terminations, so that they can get the cases off the docket. But wait, I had understood. I'm not talking about going forward. I'm talking about cases that are already, where there's already been administrative closure. I thought that the practice following Castro's death was to close the case. That those all now need to be reopened. Is that not correct? I'm not aware of that, Your Honor. What? That's the last part of the opinion. But that was in the opinion. In the opinion. I'm not aware that that's actually being executed. Well, fine, it's in the opinion. But I guess my problem with the argument that there was a reliance interest in the administrative closure is that administrative closure doesn't confer any benefits on the alien, and the alien at any time knows that his proceedings can be reopened. It hasn't changed his legal posture in the United States. And so I don't understand how that gets to unfair surprise, or there were reliance interests here because this docketing tool had been used for decades. And therefore, the AG, who has been empowered by Congress to be the adjudicator, and then he has delegated some of those responsibilities to the IJ and the board, can't say, OK, I'm going to look at this, and nobody's actually done this analysis, and there's no authorization for this. I was curious of your thoughts about the dissent in the Sixth Circuit decision. And as I read it, assuming that administrative closure is not a disposition, seemed that there are examples given there where that type of closure could be appropriate and necessary to eventually achieve a disposition. And the fact that it may have been overused over the years isn't really the legal issue before the court, and I'm obviously paraphrasing there. But what are your thoughts on that? I understand that argument. I do think that the Sixth Circuit majority opinion sort of was working on that because in practical terms, nothing has been disposed of. They're just languishing. These cases still exist, and there is no conclusion or finality that has happened. They haven't been brought back and terminated because there's been a grant of something from USCIS, for example. And so they're kind of in another world. The DHS isn't doing its job, right? DHS can just come back and say, okay, let's go, but maybe it hasn't been because there's favorable determinations by whatever the outside procedure is. There's sort of nobody's... It doesn't make any sense to come back to the immigration court just to get a rubber stamp to say, okay, you're not going to get deported. That would be the point of it, right? If somebody gets the visa they want and they're able to stay, a big chunk of these cases may be successful outside procedures. And so there's a sort of crossing T's and dotting I's problem that the proceeding is still formally there, but nobody cares anymore. That's possible. And if not, if there is something that should be going forward, then DHS should just be coming back and saying that. I don't think that means that the attorney general can't interpret his regulation the way that he has, or looked at the plain language and ended this docket management system, which is all this was. Do you have a little more time if you have something else you want to say? Unless there are any more questions, I'll rest on my brief. I do have one other question. There was some discussion of language in the regulations about being timely, and that I think there's some discussion in pastoral trauma, some reliance on the timeliness language. And so that led me to go look up the word timely, which actually means at the best possible time, right? So it's perfectly possible that the best time, the best possible time is not now, it's later after X happens. I don't think timeliness is really a point. You tend to think of timely meaning sooner rather than later, but it doesn't necessarily mean that. So that reliance doesn't seem very valid either. That's possible, but I think he was reflecting on the general time that it's taking to litigate and move on these cases. I would have to see the exact quote to give you a more fulsome answer on that. Okay. Yeah, same question. Thank you very much. Ms. Martinez. Yes, Your Honor. I would just speak to counsel's argument that these cases are languishing. These cases, if someone is in status, TPS status or DACA status, they shouldn't be able, they shouldn't be made to litigate a matter when they've been provided status already. Cases are not languishing. There are so many instances where the files aren't where they need to be. Administratively closing those cases provides for the files to rest with the agency who ultimately has the sole authority to make decisions on I-130s and I-36s and things of that nature. The argument from counsel that there is no benefit to the alien to administratively close. Aliens are made to defend cases on so many different levels. They are filing petitions with USCIS, filing work authorizations with USCIS, and then they're made to be represented before the immigration court and present their case in that matter as well. There's a great benefit to be able to focus on the most right application. I would also state that the timeliness, the ability for immigration judges to be able to use this to manage their DACA would actually allow other cases that are right to be able to be decided quicker. I have many cases I've been practicing for over 20 years in immigration court where I would love for my case to be heard next week. But I'm giving dates until 2023, 2025. These are cases that are ready to be adjudicated. And the practicality of this is the attorney general essentially made a regulation when, as the court spoke in the other cases, they had the ability to make a regulation to say immigration judges may not administratively close cases. And instead, he did it improperly by deciding castro-tum. And I would ask that the court hold that the immigration judges and the board under the regulations do have the authority to administratively close decisions where it is necessary and appropriate. Okay, any other questions? No. Thank you very much. Thank you both for your argument. Thank you. This is an interesting and important case. And the case of Florence Barrio v. Barr is submitted and we are adjourned for the week. This court for this session stands adjourned.
judges: Berzon, Gleason, Miller